IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY EDWARD BROWN,** | : | **CIVIL ACTION NO. 1:05-CV-2448** |
| Plaintiff | : | **(Judge Conner)** |
| v. | : | |
| **PENNSYLVANIA STATE DEPARTMENT OF HEALTH and DOYLESTOWN HOSPITAL,** | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the court is a motion for summary judgment by defendant Doylestown Hospital. For the reasons that follow, the motion will be granted.

**I.   Statement of Facts**[1]

Plaintiff Gary Edward Brown was born on February 8, 1955 at Doylestown Hospital. (Doc. 53 ¶ 1; Doc. 59 ¶ 1.) Until 1993, plaintiff believed that Ann and Harold Glenn Brown were his biological parents. In February 1993, plaintiff received a birthday card and letter from Ethel M. Bittle ("Bittle"), his great aunt:

> Dear Gary,
>
> I have had this card in my possession for a long while but felt it rather useless to send it to you, until I received your welcome letter two weeks ago . . . .
>
> I want to answer your letter more fully, Gary, but not at this writing. My only request at this time is for you to think more kindly

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff, the non-moving party. See infra Part II.

> towards <u>your</u> parents. They have endured much—more than they will ever reveal and I don't think I am at liberty to write anything they do not wish to have discussed or "aired until I talk with them. . . .
>
> * * *
>
> With my love, always.
> Aunt Ethel

(Doc. 53 ¶¶ 10-13; Doc. 59 ¶¶ 10-13; Doc. 1 ¶ 6.) Plaintiff did not know what his parents could reveal to him, but his wife believed Bittle was referring to adoption. (Doc. 1 ¶ 6.) Plaintiff questioned Bittle regarding his suspicion. (<u>Id.</u>) She responded by sending plaintiff a Doylestown Hospital issued birth certificate and family history, which identified Ann and Harold Glenn Brown of Milford, New Jersey as plaintiff's biological parents. (<u>Id.</u> ¶ 6 & Exs. A, B; Doc. 60, Ex. 5 ¶ 3.)

In May 1993, plaintiff questioned Edward P. Bailey, Jr., his grandfather, regarding his suspicion. His grandfather responded: "What is your need to know?" (Doc. 60, Ex. 5 ¶ 4.) That same month, plaintiff researched the February 1955 announcements in the local Doylestown newspaper, <u>The Intelligencer</u>. (Doc. 1 ¶ 9.) There were no admission or discharge announcements for Ann Brown. There was a birth announcement for a "son to Mr. and Mrs. Glenn Brown, Milford, New Jersey."[2] There was also a discharge announcement for "Mrs. Harold Mengel and son, Gary E., Milford, New Jersey." (Doc. 1, Ex. C; Doc. 53 ¶¶ 16-18; Doc. 59 ¶¶ 16-19.) Suspecting that the Mengel family was somehow involved in his adoption, plaintiff contacted the Postmaster in Milford, New Jersey and learned that no

---

[2] Harold Glenn Brown went by the name Glenn. (Doc. 53 ¶ 23; Doc. 59 ¶ 23.)

2

Mengel family lived in Milford in 1955. (Doc. 1 ¶ 10.) Also in 1993, plaintiff requested a copy of his birth records from Doylestown Hospital. The records clerk allegedly informed plaintiff that his birth records contained only his hospital-issued birth certificate. (Doc. 1 ¶ 8.)

In May 2004, plaintiff hired an attorney to help him retrieve his medical records from Doylestown Hospital.[3] When these efforts failed, plaintiff sued Doylestown Hospital in the Bucks County Court of Common Pleas. After terminating his attorney, plaintiff dismissed the suit without prejudice (Doc. 60, Ex. 5 ¶¶ 5-6.) In February 2005, plaintiff spoke with an agent at Doylestown Hospital and requested an appointment to review his birth records.[4] The agent informed plaintiff that those records were part of his birth mother's records.[5] (Id. ¶ 7.) On February 11, 2005, Doylestown Hospital allowed plaintiff, at no cost, to review and receive copies of his microfilm medical records, which were embedded

---

[3] In his affidavit, plaintiff asserts that "Bittle told me, in April 2004, that she is my birth mother." (Doc. 60, Ex. 5 ¶ 3.) Bittle died on April 15, 2004. (Doc. 53 ¶ 7; Doc. 59 ¶ 7.) This alleged statement by Bittle is hearsay. See FED. R. EVID. 801. Contrary to plaintiff's argument, this statement is not an "excited utterance" under Rule 803(2). (See Doc. 60 at 4.) Nor does this statement fall under any other exception to the rule deeming hearsay inadmissible. See FED. R. EVID. 802-804, 807.

[4] Plaintiff had already submitted a HIPAA authorization for the release of his medical records. (Doc. 60, Ex. 5 ¶ 7.)

[5] Believing Bittle to be his birth mother, plaintiff informed the agent that his birth mother was deceased. During his appointment at Doylestown Hospital to review his records, plaintiff presented Bittle's death certificate to the agent. When questioned about a personal relationship to Bittle, plaintiff presented the agent with the February 1993 letter from Bittle. The agent informed plaintiff that the hospital only had medical records for Ann Brown. (Doc. 60, Ex. 5 ¶ 7-9.)

in the medical records of Ann Brown.  (Doc. 59 ¶¶ 55-56.)  When asked why some of the records he sought were not in the records he reviewed, the agent informed plaintiff that the other records were maintained in a different Doylestown Hospital filing facility and that the person who maintained those records was currently unavailable.  (Doc. 60, Ex. 5 ¶ 11.)

On November 25, 2005, plaintiff commenced the instant action.  (Doc. 1.)  Plaintiff alleges that Doylestown Hospital violated the Fourteenth Amendment and section 115.29 of Title 28 of the Pennsylvania Code by facilitating a "gray market adoption" of him[6] and by failing to provide him with his complete and accurate medical records in 1993 and 2005.[7]  He asserts that the actions of Doylestown

---

[6] Plaintiff believes that Bittle and his grandfather are his biological parents and that his conception was arranged to provide Ann and Harold Glenn Brown "with a child from familial ties since [Ann] Brown . . . was unable to carry a child to term."  (Doc. 1 ¶ 20; see also id. ¶¶ 19, 21.)

[7] The complaint also avers claims against Doylestown Hospital pursuant to sections 711 *et seq.* of Title 20 and section 534 of Title 71 of Pennsylvania statutes.  (Doc. 1 ¶¶ 1, 23.)  However, in opposition to the instant motion, which addresses all of these claims, plaintiff argues only that Doylestown Hospital violated the Fourteenth Amendment and section 115.29 of Title 28 of the Pennsylvania Code.  (See Docs. 60, 63.)  Accordingly, the court concludes that plaintiff abandoned his other claims, and summary judgment on these claims is appropriate.  See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (noting that abandonment of a position is tantamount to waiver).  Absent abandonment, summary judgment is nevertheless appropriate on these claims.  Assuming *arguendo* that section 534 provides a private cause of action, Doylestown Hospital cannot violate this section because the section only involves the powers and duties of the Pennsylvania Department of Health.  See 71 PA. STAT. ANN. § 534.  In addition, Doylestown Hospital did not violate sections 711 *et seq.* of Title 20 regarding the disposition of wills, trusts, and estates because the evidence of record reveals that plaintiff's biological parents are Ann and Harold Glenn Brown, who are not deceased.  See infra Part III.

Hospital have deprived him of his right to a portion of Bittle's family trust.  (Id. ¶ 28; Doc. 59 ¶ 36.)  Doylestown Hospital filed the instant motion for summary judgment and the parties have fully briefed these issues.[8]  The motion is now ripe for disposition.

## II.    Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to adduce "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

---

[8] In its brief in support of the instant motion, Doylestown Hospital also seeks summary judgment on plaintiff's claims pursuant to the Public Health Service Act, 42 U.S.C. §§ 242k(f), 244, 245, and the Vital Statistics Law of 1953, 35 Pa. Stat. Ann. §§ 450.201, 450.401.  (See Doc. 54 at 17-18.)  However, plaintiff brought these claims against only defendant Pennsylvania State Department of Health.  (See Doc. 1 ¶¶ 24-25.)  The order of court dated June 5, 2006 (Doc. 29) dismissed all claims against the Department of Health.  Accordingly, the court will not address these claims in the instant memorandum.

### III.     Discussion

Plaintiff argues that Doylestown Hospital violated his civil rights under the Fourteenth Amendment by facilitating a "gray market adoption" and by failing to provide him with his complete and accurate medical records in 1993 and 2005. Section 1983 of Title 42 of the United States Code is the mechanism for plaintiff to bring his Fourteenth Amendment claims against Doylestown Hospital.  Section 1983 offers private citizens a cause of action for violations of federal law by state officials.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or statutory right by a person "acting under

color of state law."[9]  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Civil rights actions under 42 U.S.C. § 1983 are, in essence, constitutional tort claims.  Owens v. Okure, 488 U.S. 235, 249-50 (1989).  As such, they are subject to the same statute of limitations period applicable to state personal injury actions.  Id.; Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003).  In Pennsylvania, this period is two years, see 42 PA. CONS. STAT. § 5524(7); see also Garvin, 354 F.3d at 220, and it commences "when the plaintiff knew or had reason to know of the injury on which the claim is based."  Stubbs v. DeRose, No. 3:CV-03-2362, 2006 WL 842305, at *3 (M.D. Pa. Mar. 29, 2006) (citing Rose v. Bartle, 871 F.2d 331, 347-51 (3d Cir. 1989)).

In the matter *sub judice*, the court finds that plaintiff's Fourteenth Amendment claims relating to the alleged "gray market adoption" and the alleged failure of Doylestown Hospital to provide him with his complete and accurate medical records in 1993 are barred by the applicable statute of limitations.  No later

---

[9] Whether an entity is "acting under color of state law" depends on the relationship between the objectionable conduct and the state.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-52 (1999).  Surprisingly, Doylestown Hospital does not contest that, at all times material to plaintiff's claims, it acted under color of state law.  Therefore, the court will assume, for the purpose of this memorandum only, that state action is present.  The court notes, however, that plaintiff does not allege that Doylestown Hospital is a state actor or that its conduct can be "fairly treated as that of the [s]tate itself."  Id. (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).  And, it is undisputed that Doylestown Hospital is a non-profit corporation licensed in Pennsylvania.  (Doc. 53 ¶ 2; Doc. 59 ¶ 2.)

than May 1993, plaintiff suspected that he was adopted.[10]  In fact, shortly thereafter plaintiff began to research his suspicion by requesting his birth records from Doylestown Hospital, researching admission, discharge, and birth announcements from the local newspaper, and inquiring about a Mengel family in Milford, New Jersey.  (See Doc. 1 ¶¶ 8-10.)  Therefore, the court finds that the limitations period on plaintiff's "gray market adoption" claim commenced in 1993 when plaintiff "had reason to know" of his alleged injury.  See Stubbs, 2006 WL 842305, at *3.

     Plaintiff's contention that the discovery rule tolled the limitations period until April 2004—the date when Bittle allegedly told plaintiff she was his mother—is unavailing.  Under the Pennsylvania discovery rule, "[w]here the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible."  Calle v. York Hosp., 232 F. Supp. 2d 353, 360 (M.D. Pa. 2002) (quoting Hayward v. Med. Ctr. of Beaver County, 608 A.2d 1040, 1043 (Pa. 1992)).  In the instant matter, the court finds that the discovery rule tolled the limitations period

---

[10] As early as February 1993, after receiving a letter from Bittle, plaintiff suspected that he was adopted because his wife suggested this possibility.  (See Doc. 1 ¶ 6.)  Following plaintiff's questions regarding his suspicion, Bittle sent him a Doylestown Hospital issued birth certificate and family history, which identified Ann and Harold Glenn Brown as his biological parents.  (See id.; see also id., Exs. A, B.)  In May 1993, plaintiff questioned his grandfather regarding his suspicion.  His grandfather's response of "what is your need to know" confirmed plaintiff's suspicion.  (See id. ¶ 7; Doc. 60, Ex. 5 ¶ 4; see also id. at 8 (stating that "any reasonable person" would take his grandfather's response to mean that he was adopted)).

for plaintiff's "gray market adoption" claim from February 1955—the date of the alleged injury (i.e., the alleged adoption)—until May 1993—the date when plaintiff suspected that he was adopted. By May 1993, plaintiff was no longer "reasonably unaware" of his alleged injury and, therefore, the discovery rule is inapplicable beyond that time. See Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005) ("The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured."). Accordingly, plaintiff's Fourteenth Amendment claim relating to the alleged "gray market adoption," brought over twelve years after plaintiff suspected that he was adopted, is barred by the applicable statute of limitations.

Assuming *arguendo* that the "grey market adoption" claim is not time-barred, summary judgment on this claim is nevertheless warranted. The undisputed evidence of record reveals that Ann and Harold Glenn Brown are plaintiff's biological parents. (See Doc. 54, Exs. A, B.) Plaintiff sought DNA testing of Ann and Harold Glenn Brown to prove his assertion that they are not his biological parents. (See Doc. 60 at 12.) Notably, however, he now argues that the results of two DNA tests are inadmissible. (See Doc. 63.) Plaintiff offers no evidence to refute the affidavits of Ann and Harold Glenn Brown, in which they state that they are

plaintiff's biological parents and that he was not adopted.[11]  (Doc. 54, Exs. A, B.)  His unsupported speculation that Bittle and his grandfather are his biological parents[12] and that the hospital records demonstrate that Ann Brown could not have given birth to him[13] does not create a genuine issue of material fact.  Therefore, the court

---

[11] Ann and Harold Glenn Brown also attest to their blood types—O and A, respectively—to refute the allegations in the complaint that they could not be his biological parents based on their blood types.  (Compare Doc. 54, Ex. A ¶ 6, and id. Ex. B ¶ 4, with Doc. 1 ¶ 15.)

[12] To support this speculation, plaintiff offers the following evidence:  (1) the local Doylestown newspaper in February 1955 does not contain a hospital admission or discharge notice for Ann Brown, but does show a discharge of "Mrs. Harold Mengel and son, Gary E., of Milford, N.J." (see Doc. 1, Ex. C), (2) Ann Brown's hospital labor record has the text "Men" crossed out and Brown rewritten as the name of the patient (see Doc. 1, Ex. D), (3) Bittle had a copy of plaintiff's hospital issued birth certificate and family history (see Doc. 60, Ex. 5 ¶ 3), (4) there are three different birth certificates for him, two issued by Doylestown Hospital and one issued by the state (see id. ¶¶ 12-13; see also id. at 10), and (5) in April 2004, Bittle told plaintiff that she was his birth mother (see id.).  Given this evidence, plaintiff asserts that Mrs. Harold Mengel, not Ann Brown, gave birth to him and that Bittle is Mrs. Harold Mengel.  A reasonable jury could not make such a conclusion.  First, the local newspaper contained a birth announcement for a "son to Mr. and Mrs. Glenn Brown, Milford, New Jersey."  (See Doc. 1, Ex. C.)  Second, Ann Brown's hospital labor record contains the crossed-out text "Menz," not "Men."  (See Doc. 1, Ex. D; see also id. Ex. C (showing a birth announcement for a "son to Mr. and Mrs. Paul Menzen")).  Finally, Mr. Harold Mengel attests that his wife, now deceased, gave birth to their son, Harold, Jr., on February 8, 1955 and that her discharge announcement in the local newspaper was inaccurate as to the name of their son and their residence.  (See Doc. 54, Ex. G.)

[13] After reviewing the medical records, plaintiff and his wife speculate, without corroborating medical evidence, that Ann Brown could not be his birth mother because he would have been her second full term pregnancy.  They state that his birth is indicative of a woman's first full term birth because he was born with bilateral clubbed feet and the labor for his birth lasted over eighteen hours.  (See Doc. 59 ¶ 51; Doc. 60 at 9; id., Ex. 6.)  This speculation is not evidence and cannot defeat summary judgment.

finds that a reasonable jury could not conclude that Ann and Harold Glenn Brown are not plaintiff's biological parents or that Doylestown Hospital facilitated a "gray market adoption" of plaintiff. Accordingly, the court will grant summary judgment in favor of Doylestown Hospital on plaintiff's Fourteenth Amendment claim regarding the alleged "gray market adoption."

Like his "gray market adoption" claim, plaintiff's Fourteenth Amendment claim relating to the alleged failure of Doylestown Hospital to provide him with his complete and accurate medical records in 1993 is time-barred. In 1993 when a Doylestown Hospital records clerk allegedly informed him that the records contained only the hospital-issued birth certificate (see Doc. 1 ¶ 8), plaintiff already suspected that he was adopted. See supra. Therefore, plaintiff had reason to know of this alleged injury in 1993 and his 2005 claim based on this injury is barred by the applicable statute of limitations. See Stubbs, 2006 WL 842305, at *3. Even if it is not time-barred, the court finds that this Fourteenth Amendment claim—as either a substantive due process or equal protection claim—is without merit. The record clerk's alleged mistake regarding plaintiff's birth records does not "shock the conscience." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003) (citing County of Sacramento v. Lewis, 523 U.S. 833, 844-45 (1998)). Likewise, there is no evidence of record, nor does plaintiff allege, that he was "treated differently from others similarly situated" or that the record clerk's actions were intentional. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); Hill v. Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). Accordingly,

the court will grant summary judgment in favor of Doylestown Hospital on plaintiff's Fourteenth Amendment claim regarding the alleged failure of Doylestown Hospital to provide him with his complete and accurate medical records in 1993.

With respect to plaintiff's remaining Fourteenth Amendment claim—the alleged failure of Doylestown Hospital to provide him with his complete and accurate medical records in 2005[14]—the court finds that summary judgment in favor of Doylestown Hospital is warranted. The evidence of record demonstrates that on February 11, 2005, Doylestown Hospital allowed plaintiff, at no cost, to review his microfilm medical records, which were embedded in the medical records of Ann Brown and that he was provided copies of those records. (Doc. 59 ¶¶ 55-56.) In addition, the records department agent informed plaintiff that other records were located in a different filing facility, but that the person who maintained those records was currently unavailable. (Doc. 60, Ex. 5 ¶ 11.) Plaintiff offers no evidence that he attempted to retrieve these other documents and was refused. In fact, the record is devoid of any evidence that Doylestown Hospital refused to provide

---

[14] At least part of this claim stems from plaintiff's allegation that Doylestown Hospital withheld the OB log from 1955 listing his birth. (See Doc. 60 at 8 ("[Doylestown Hospital] failed to provide plaintiff with the OB log to prove his claims. It was discoverable . . . even if the entries were . . . damaging to the defendant's defense.")). However, this issue was previously resolved during discovery. The order of court dated August 28, 2006 denied plaintiff's request for this OB log because it no longer exists. (See Doc. 42; see also Doc. 41 at 15.)

plaintiff with any medical records to which he was entitled.[15]  Therefore, the court finds that a reasonable jury could not conclude that Doylestown Hospital failed to provide plaintiff with complete and accurate medical records in 2005.  Accordingly, the court will grant summary judgment in favor of Doylestown Hospital on this Fourteenth Amendment claim.

For the foregoing reasons, summary judgment in favor of Doylestown Hospital on plaintiff's claims under the Fourteenth Amendment is warranted.  To the extent that plaintiff raises similar claims under section 115.29 of Title 28 of the Pennsylvania Code,[16] these claims must fail for the same reasons.  Accordingly, the court will grant summary judgment in favor of Doylestown Hospital on all of plaintiff's claims.

An appropriate order will issue.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     September 18, 2007

---

[15] Plaintiff's assertion that he has not been provided with his complete and accurate medical record is based on his unsupported speculation that Ann and Harold Glenn Brown are not his biological parents.  (See Doc. 60 at 8-10.)  As set forth supra, this speculation is without merit.

[16] This section provides that "[p]atients or patient designees shall be given access to or a copy of their medical records, or both."  28 PA. CODE § 115.29.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY EDWARD BROWN,** | : | **CIVIL ACTION NO. 1:05-CV-2448** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **PENNSYLVANIA STATE DEPARTMENT OF HEALTH and DOYLESTOWN HOSPITAL,** | : | |
| **Defendants** | : | |

### ORDER

AND NOW, this 18th day of September, 2007, upon consideration of the motion for summary judgment (Doc. 52), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 52) is GRANTED.

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendant Doylestown Hospital and against plaintiff on all claims.

3. The Clerk of Court is directed to CLOSE this case.

                                                            S/ Christopher C. Conner
                                                           CHRISTOPHER C. CONNER
                                                           United States District Judge